# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WISCONSIN

**RONNELL DONYELL FARR,**

      Petitioner,

    **v.**                                          **Case No. 17-CV-798**

**WILLIAM J. POLLARD,**

      Respondent.

## DECISION AND ORDER
## DENYING PETITION FOR WRIT OF HABEAS CORPUS

In 2011, Ronnell Donyell Farr was sentenced to life in prison after a Wisconsin jury convicted him of the first-degree murder of Michael Bender outside a Milwaukee nightclub. Mr. Farr filed a post-conviction motion, arguing that his trial lawyer failed to investigate key evidence. He further argued that his post-conviction lawyer erred in failing to allege that his trial lawyer was ineffective, the prosecutor engaged in misconduct, and the trial court abused its discretion in allowing certain evidence to be presented. The state courts rejected Mr. Farr's arguments, finding that he had not demonstrated that either lawyer exhibited deficient performance or that he was prejudiced by his lawyers' alleged errors. Mr. Farr is currently serving his sentence at Dodge Correctional Institution in Waupun, Wisconsin.

In June 2017, Mr. Farr filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging that he is in custody in violation of the United States Constitution because his trial and post-conviction lawyers provided ineffective

assistance of counsel. The respondent maintains that Mr. Farr has not satisfied his burden of proving that his claims merit relief under the deferential standards set forth in § 2254. The Court agrees. Because the state court's decision denying Mr. Farr's claims was not objectively unreasonable, Farr is not entitled to relief under § 2254. The Court therefore will deny his federal habeas petition.

## I. Background

On March 28, 2010, Michael Bender was shot and killed outside Quarters nightclub in Milwaukee's Riverwest neighborhood. *See* Exhibit 2 to Answer to Petition for a Writ of Habeas Corpus, ECF No. 20-2:7. A few days later, Ronnell Farr was arrested and interrogated about Bender's death. *See id.* at 7–12. After several interrogations, Mr. Farr confessed to Detective Rodolfo Gomez that he had shot Bender, *id.* at 11–12, though he claimed the shooting was unintentional, *see id.* at 23.

### A. Circuit Court proceedings

On April 5, 2010, Mr. Farr was charged in Milwaukee County Circuit Court with first-degree intentional homicide with the use of a dangerous weapon. *Id.* at 14. Prior to trial, Mr. Farr filed a motion to determine the admissibility of his statements to law enforcement. *Id.* Following a hearing, the Circuit Court concluded that Mr. Farr's statement to Detective Gomez was voluntary and could be used at trial. *See* Exhibit 25 to Answer, ECF No. 20-25; Exhibit 26 to Answer, ECF No. 20-26:1–35.

The case was tried before a jury in February 2011. *See* Answer Ex. 26; Exhibit 27 to Answer, ECF No. 20-27; Exhibit 28 to Answer, ECF No. 20-28; Exhibit 29 to Answer, ECF No. 20-29; Exhibit 30 to Answer, ECF No. 20-30; Exhibit 31 to Answer, ECF No. 20-31; Exhibit 32 to Answer, ECF No. 20-32; Exhibit 33 to Answer, ECF No. 20-33. At trial, Mr. Farr testified that he recognized Bender inside Quarters as the man who stole his designer eyeglasses and shot him back in August 2009. *See* Answer Ex. 30, 67:3–81:17. He later saw Bender outside the club and decided to "run up on him and take [his] glasses back." *Id.* at 88:11–89:9. Mr. Farr pointed the gun at Bender, not intending to shoot, but the gun fired multiple times. *Id.* at 88:22–89:18. He then fled the scene. *Id.* at 89:19–90:8.

As part of his defense, Mr. Farr called Detective Gomez to testify about the statement Farr made to him. Detective Gomez testified that he assisted in a live lineup involving Mr. Farr on April 3, 2010. Answer Ex. 31, at 77:23–78:2. According to Detective Gomez, while escorting Mr. Farr back to the prisoner processing section, Farr lamented that he didn't mean to kill Bender. *Id.* at 78:3–79:18.

The jury ultimately found Mr. Farr guilty of intentional homicide. *See* Exhibit 33 to Answer, ECF No. 20-33. He was sentenced to life in prison with eligibility for release to extended supervision after forty years. *See* Exhibit 34 to Answer, ECF No. 20-34; *see also* Exhibit 1 to Answer, ECF No. 20-1.

### B. Post-conviction proceedings

Mr. Farr was appointed new counsel for post-conviction proceedings. *See* Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in

State Custody at 11–12, ECF No. 1, He "filed a motion for a new trial alleging violations of his constitutional rights and trial court error." Answer Ex. 2, at 49. The trial court denied the motion without a hearing. *See id.* at 49–51.

Mr. Farr appealed, arguing that his confession to Detective Gomez was involuntary, the Circuit Court erred in determining that the confession was voluntary and failing to make a *Miranda* finding, evidence derived from the involuntary confession—including an interview with an alleged accomplice—should have been excluded, and a new trial was warranted in the interests of justice. *See* Attachments to Habeas Petition at 1, ECF No. 1-1; *see also* Answer Ex. 2; Exhibit 3 to Answer, ECF No. 20-3; Exhibit 4 to Answer, ECF No. 20-4. On February 18, 2014, the Wisconsin Court of Appeals issued a decision affirming Mr. Farr's judgment of conviction and the order denying his post-conviction motion. *See* Exhibit 5 to Answer, ECF No. 20-5; *see also State v. Farr*, Appeal No. 2013AP504-CR, 2014 Wisc. App. LEXIS 133 (Wis. Ct. App. Feb. 18, 2014). The court determined that judicial estoppel barred Mr. Farr's claim concerning his confession, the police would have interviewed the alleged accomplice regardless of Mr. Farr's confession, and the case did not warrant discretionary reversal. *See id.* ¶¶ 4–12.

Mr. Farr sought review of the appellate court's decision. *See* Exhibit 6 to Answer, ECF No. 20-6; Exhibit 7 to Answer, ECF No. 20-7. The Wisconsin Supreme Court summarily denied his petition for review on August 4, 2014. *See* Exhibit 8 to Answer, ECF No. 20-8. Mr. Farr did not file a petition for certiorari in the United States Supreme Court. *See* Pet. at 4.

Proceeding without the assistance of counsel, on August 14, 2015, Mr. Farr filed a motion for post-conviction relief seeking a new trial pursuant to Wis. Stat. § 974.06 and *State ex rel. Rothering v. McCaughtry*, 556 N.W.2d 136 (Wis. Ct. App. 1996). *See* Exhibit 9 to Answer, ECF No. 20-9:63. He argued that his post-conviction lawyer was ineffective for failing to raise claims of ineffective assistance of trial counsel, prosecutorial misconduct, and abuse of discretion by the trial court. *See id.* at 63–71. The Circuit Court rejected these arguments and denied the motion without a hearing. *See id.*

Mr. Farr appealed again. *See* Answer Ex. 9; Exhibit 10 to Answer, ECF No. 20-10; Exhibit 11 to Answer, ECF No. 20-11. On November 16, 2015, the Wisconsin Court of Appeals issued a decision affirming the denial of Mr. Farr's § 974.06 motion. *See* Exhibit 12 to Answer, ECF No. 20-12; *see also State v. Farr*, Appeal No. 2015AP1901, 2016 Wisc. App. LEXIS 749 (Wis. Ct. App. Nov. 16, 2016). The court held that trial counsel was not ineffective for failing to investigate, post-conviction counsel was not ineffective for failing to challenge alleged prosecutorial misconduct, and the trial court had properly exercised its discretion in managing the challenged evidence. *See id.* ¶¶ 7–42.

Again, Mr. Farr sought review of the appellate court's decision. *See* Exhibit 13 to Answer, ECF No. 20-13; Exhibit 14 to Answer, ECF No. 20-14. The Wisconsin Supreme Court summarily denied his petition for review on March 13, 2017. *See* Exhibit 15 to Answer, ECF No. 20-15.

### C. Federal habeas proceedings

On June 6, 2017, Mr. Farr filed a federal habeas petition alleging ineffective assistance of trial and post-conviction counsel. *See* Attach. to Pet. at 3–8. The matter was randomly assigned to this Court, and all parties have consented to magistrate-judge jurisdiction. *See* Consent to Proceed Before a Magistrate Judge, ECF Nos. 6 & 11 (citing 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b)). The Court has jurisdiction over Mr. Farr's petition under 28 U.S.C. § 1331. The petition is fully briefed and ready for disposition. *See* Petitioner's Supporting Memorandum, ECF No. 2; Respondent's Brief in Opposition, ECF No. 23; Petitioner's Reply, ECF No. 24.

## II. Standard of Review

Federal habeas corpus review is governed by the Antiterrorism and Effective Death Penalty Act (AEDPA) of 1996, Pub. L. No. 104-132, 110 Stat. 1214. Under AEDPA, a prisoner in custody pursuant to a state-court judgment of conviction is entitled to federal habeas relief only if he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). With respect to claims adjudicated on the merits in state court, a federal court can grant an application for a writ of habeas corpus "only if the state court's decision was contrary to clearly established Supreme Court precedent, involved an unreasonable application of such precedent, or was based on an unreasonable determination of the facts in light of the evidence presented in state court." *Promotor v. Pollard*, 628

F.3d 878, 888 (7th Cir. 2010) (citing 28 U.S.C. § 2254(d)); *see also White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).

"A legal principle is 'clearly established' within the meaning of [§ 2254(d)(1)] only when it is embodied in a holding of [the Supreme Court]." *Thaler v. Haynes*, 559 U.S. 43, 47 (2010) (citing *Carey v. Musladin*, 549 U.S. 70, 74 (2006); *Williams v. Taylor*, 529 U.S. 362, 412 (2000)). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412–13 (opinion of O'Connor, J.).

Similarly, a state-court decision results in an "unreasonable application" of clearly established federal law when that court either "identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. A writ of habeas corpus may not issue under the "unreasonable application" clause "simply because the federal court concludes that the state court erred. Rather, the applicant must demonstrate that the state court applied the Supreme Court's precedent in an objectively unreasonable manner." *Kubsch v. Neal*, 838 F.3d 845, 859 (7th Cir. 2016) (citing *Woodford v. Visciotti*, 537 U.S. 19, 24–25 (2002)). Thus, the petitioner "must show that the state court's ruling

. . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Kubsch*, 838 F.3d at 859 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

"[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). For purposes of federal habeas review, state-court factual determinations are entitled to "substantial deference." *Brumfield v. Cain*, 135 S. Ct. 2269, 2277 (2015). To obtain relief under § 2254(d)(2), a petitioner must demonstrate that the state-court decision "rests upon fact-finding that ignores the clear and convincing weight of the evidence." *McManus v. Neal*, 779 F.3d 634, 649 (7th Cir. 2015) (quoting *Goudy v. Basinger*, 604 F.3d 394, 399 (7th Cir. 2010)); *see also* 28 U.S.C. § 2254(e)(1). "The decision must be 'so inadequately supported by the record as to be arbitrary and therefore objectively unreasonable.'" *Alston v. Smith*, 840 F.3d 363, 370 (7th Cir. 2016) (quoting *Ward v. Sternes*, 334 F.3d 696, 704 (7th Cir. 2003)).

When applying the above standards, federal courts look to "the 'last reasoned state-court decision' to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (quoting *Johnson v. Williams,* 568 U.S. 289, 297 n.1 (2013)).

### III. Discussion

Mr. Farr alleges that he is in custody in violation of the Constitution because his trial and his post-conviction lawyers provided ineffective assistance of counsel.

Attach. to Pet. at 3–8. He asks the Court to overturn his judgment of conviction or, in the alternative, grant a new trial or an evidentiary hearing. Pet. at 12.

## A. Applicable law

Criminal defendants have a constitutional right "to the effective assistance of counsel." *Strickland v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970)). To succeed on an ineffective-assistance-of-counsel claim, a habeas petitioner "must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986) (citing *Strickland*, 466 U.S. at 688, 694). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "[C]ourts need not address both prongs of *Strickland*" if the petitioner makes an inadequate showing as to one. *Atkins v. Zenk*, 667 F.3d 939, 946 (7th Cir. 2012) (citing *Strickland*, 466 U.S. at 697).

"Judicial scrutiny of counsel's performance must be highly deferential." *Strickland*, 466 U.S. at 689. On habeas review, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Thus, when a *Strickland* claim is evaluated under § 2254(d)(1), the standard of review is said to be "doubly

deferential." *See Mirzayance*, 556 U.S. at 123 (citing *Yarborough v. Gentry*, 540 U.S. 1, 5–6 (2003) (per curiam)).

Although "[t]he general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel," *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)), a "special gloss" applies when a habeas petitioner challenges "the selection of issues to present on appeal," *Makiel*, 782 F.3d at 897. "Appellate counsel is not required to present every non-frivolous claim on behalf of her client." *Id.* (citing *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996)). Indeed, the "process of winnowing out weaker arguments . . . is the hallmark of effective appellate advocacy." *Makiel*, 782 F.3d at 897 (quoting *Smith v. Murray*, 477 U.S. 527, 536 (1986)).

Appellate counsel's performance is thus deficient under *Strickland* "only if she fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Makiel*, 782 F.3d at 898 (quoting *Brown v. Finnan*, 598 F.3d 416, 425 (7th Cir. 2010); *Lee v. Davis*, 328 F.3d 896, 900–01 (7th Cir. 2003)). "Proving that an unraised claim is clearly stronger than a claim that was raised is generally difficult 'because the comparative strength of two claims is usually debatable.'" *Makiel*, 782 F.3d at 898 (quoting *Shaw v. Wilson*, 721 F.3d 908, 915 (7th Cir. 2013)).

### B. Analysis

Mr. Farr claims that he was denied the effective assistance of counsel when his lawyer failed to investigate and prepare for trial. Attach. to Pet. at 3–4. He

further claims that his post-conviction lawyer provided constitutionally deficient representation in three respects: failing to allege that Mr. Farr's trial lawyer was ineffective; failing to allege that Mr. Farr's trial was tainted by prosecutorial misconduct; and failing to allege that the trial court abused its discretion when it allowed the State to present certain demonstrative evidence. *Id.* at 4–8.

### 1. Whether Mr. Farr is entitled to relief under § 2254 on his failure-to-investigate claims

Mr. Farr first claims that his trial lawyer was ineffective for introducing his statement to Detective Gomez and that his post-conviction lawyer was ineffective for failing to raise this issue on appeal. He alleges that his trial lawyer didn't fully investigate the statement and thus didn't recognize that Detective Gomez's police report conflicted with Mr. Farr's version of events. If his lawyer had, according to Mr. Farr, he would not have called Detective Gomez as a defense witness, and Farr's credibility would have remained intact. *See* Petr's Mem. at 1–4.

The Wisconsin Court of Appeals summarized Mr. Farr's trial testimony as follows. *See* Answer Ex. 12, ¶ 11. He saw Bender inside Quarters, left for a brief time, and, upon returning to the club, decided to bring in his gun from his car for protection. While still in the car, Mr. Farr cocked the gun and chambered a round. He then went inside before going back out to get his friend for "last call." Outside, Mr. Farr saw Bender on the sidewalk; he hadn't seen Bender exit the bar. Mr. Farr decided to rob back his glasses. He put the gun to Bender's head, not intending to shoot, but it fired multiple times.

The appellate court also summarized Detective Gomez's trial testimony. *See* Answer Ex. 12, ¶ 12. Mr. Farr told him that he went out to his car to get his gun upon noticing Bender inside Quarters; that he saw Bender exit the club when he (Farr) re-entered; that he left the club to tell his friend to come inside; that he saw Bender outside; that he put the gun to Bender's head, not to shoot but to scare him; that he cocked the gun; that he touched the trigger; and that while pointing the gun to Bender's head the gun went off.

Mr. Farr argues that, with a proper investigation, his trial lawyer would have realized that Detective Gomez's testimony was "completely different" from Farr's testimony regarding whether Farr saw Bender leave the club and when Farr "cocked" the gun. Petr's Mem. at 2. The record, however, fails to substantiate the claimed conflict. Detective Gomez never testified that Mr. Farr told him he followed Bender out the club. Rather, both Mr. Farr and Detective Gomez testified that Farr observed Bender outside the club while he was telling his friend to come inside for one last drink. *Compare* Answer Ex. 30, at 88:5–13, *with* Answer Ex. 31, at 84:7–85:18.

Likewise, it appears that Mr. Farr and Detective Gomez were describing different actions when referencing the cocking of the gun. Mr. Farr testified that he cocked the gun while he was in the car by pulling back its slide. Answer Ex. 31, at 24:4–25. Detective Gomez testified that Mr. Farr told him he cocked the hammer of the gun with his thumb when he observed Bender outside. *Id.* at 84:14–85:13.

Because they described two different steps in the firing process, Detective Gomez's testimony was not necessarily inconsistent with Mr. Farr's testimony.

Assuming there was a conflict, the Wisconsin Court of Appeals reasonably determined that Mr. Farr's trial lawyer was not deficient because the alleged discrepancies did not "necessarily undermine the defense theory that Farr never intended to kill Bender." Answer Ex. 12, ¶ 13. The crux of Detective Gomez's testimony was that Mr. Farr—while holding back tears—had told him that he didn't mean to shoot Bender. *See* Answer Ex. 31, at 78:7–79:18, 80:12–24, 83:23–85:18, 88:11–18. Thus, while a few details provided by Detective Gomez may have differed from Mr. Farr's version of events, both were consistent on the key defense issue: Farr claimed that the shooting was unintentional.

Mr. Farr overstates the importance of Detective Gomez's testimony when he argues that the State "made the discrepancies a big part of its theory of intent." Petr's Reply at 5. During closing arguments, the State attempted to convince the jury the shooting was intentional based on the physical evidence (5 spent shell casings, 1 gunshot wound to the head, and 3 gunshot wounds to the torso), Mr. Farr's actions after the shooting (he fled and got rid of the gun), and the surveillance video from the club (showing Farr point a gun at the back of Bender's head and fire). The cocking of the gun was mentioned only in passing while describing the above evidence. *See* Answer Ex. 32, at 28:14–40:3.

Given that evidence, the Wisconsin Court of Appeals reasonably determined that Mr. Farr had failed to demonstrate that he was prejudiced by his trial lawyer's

alleged errors. *See* Answer Ex. 12, ¶ 15. Mr. Farr admitted, and the video showed, he saw Bender outside the club, ran up behind him, pointed a loaded, cocked gun to the back of his head, and fired. The outcome of the trial therefore likely would have been the same with or without Detective Gomez's testimony.

The Wisconsin state courts reasonably applied *Strickland* in finding that trial counsel was not ineffective for introducing Detective Gomez's statement. Because trial counsel did not provide ineffective assistance, Mr. Farr's post-conviction lawyer was not ineffective for failing to point out his alleged errors. *See Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel.").

Mr. Farr also claims that his trial lawyer was ineffective for failing to investigate his custodial statement to Detective James Hensley, wherein Farr apparently confessed to the shooting during an unrecorded portion of the interrogation. *See* Petr's Mem. at 4–7. The Wisconsin Court of Appeals rejected this claim, reasoning that it was speculative and conclusory, an improper effort to relitigate his pretrial *Miranda* motion, and barred by judicial estoppel. *See* Answer Ex. 12, ¶¶ 7–9. These state procedural grounds are independent of the federal question and adequate to support the judgment. *See Perry v. McCaughtry*, 308 F.3d 682, 688 (7th Cir. 2002) (citing *Stewart v. Smith*, 536 U.S. 856 (2002); *Coleman v. Thompson*, 501 U.S. 722, 729 (1991)). Mr. Farr has not attempted to excuse this default; thus, this claim is procedurally barred. *See Lewis v. Sternes*, 390 F.3d 1019, 1026 (7th Cir. 2004).

Accordingly, Mr. Farr has not met his burden of demonstrating that he is entitled to relief under § 2254 on his failure-to-investigate claims.

### 2. Whether Mr. Farr is entitled to relief under § 2254 on his prosecutorial-misconduct claims

Mr. Farr also claims that his post-conviction lawyer was ineffective for failing to argue that the state prosecutor engaged in misconduct when he cross-examined Farr and gave his closing argument. *See* Petr's Mem. at 9–12.

According to the United States Supreme Court, undesirable or universally condemned comments by a prosecutor are not sufficient to establish a constitutional violation. *See Darden v. Wainwright*, 477 U.S. 168, 180–81 (1986) (citing *Darden v. Wainwright*, 699 F.2d 1031, 1036 (11th Cir. 1983)). Rather, "[t]he relevant question is whether the prosecutors' comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden*, 477 U.S. at 181 (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "The *Darden* test has two prongs. First, the court evaluates whether the prosecution's statements were improper. Second, if the comments were improper, the court asks whether the defendant was prejudiced by them." *Bartlett v. Battaglia*, 453 F.3d 796, 800 (7th Cir. 2006) (citing *Ruvalcaba v. Chandler*, 416 F.3d 555, 565 (7th Cir. 2005)).

### a. Alleged prosecutorial misconduct during cross-examination of Mr. Farr

Mr. Farr argues that the prosecutor's questions about the glasses Bender was wearing the night of the shooting and Bender's appearance were "designed to

inflame the jury[] and lay foundation for later misconduct in its closing." Petr's Mem. at 9.

After Mr. Farr affirmed that he believed Bender was wearing the glasses that were stolen from him, the prosecutor published a picture of a pair of glasses next to a pool of blood. *See* Answer Ex. 31, at 18:4–20:6. The prosecutor then asked, "Are you still interested in having those glasses?" *Id.* at 20:7. Mr. Farr's lawyer objected to the question, and the trial court sustained the objection. *Id.* at 20:8–9. The prosecutor continued, "You killed a man because of those glasses?" *Id.* at 20:11. Again, Mr. Farr's lawyer objected. *Id.* at 20:12–13. The court sustained the objection and ordered the jury to disregard the prosecutor's questions. *Id.* at 20:14–18.

Later, after Mr. Farr confirmed that the glasses were merely an accessory (i.e., they weren't used to correct his vision), the prosecutor asked, "So not only was Michael Bender killed over glasses; he was killed over vanity glasses." *Id.* at 60:9–61:8. Mr. Farr's lawyer objected, the court sustained the objection, and, during a sidebar, the court denied Mr. Farr's motion for a mistrial based on improper questioning. *See id.* at 61:9–12, 68:22–70:12. Before closing arguments, the court again instructed the jury to disregard any question that was not allowed to be answered. *See* Answer Ex. 32, at 25:2–7.

On cross-examination, the prosecutor also attempted to challenge Mr. Farr's belief that Bender was the man who had robbed him. Mr. Farr stated he told police that the man who robbed him had bumps on his face. *See* Answer Ex. 31, at 38:3–11. The prosecutor then showed Mr. Farr three post-mortem photographs of Bender

and asked Farr to point out the bumps on Bender's face; Mr. Farr testified that he couldn't see them on the photos. *See id.* at 44:18–46:1. Prior to these questions, Mr. Farr's lawyer objected to showing the post-mortem photographs. *See id.* at 44:6–14. The trial court ruled that the State could show Mr. Farr three photos but only one could be published to the jury. *Id.* at 66:25–68:2.

The Wisconsin Court of Appeals determined that post-conviction counsel did not provide ineffective assistance with respect to the above questions, finding that the trial court's rulings were correct. *See* Answer Ex. 12, ¶¶ 24–25. That determination was not objectively unreasonable. The trial court agreed that the questions concerning the allegedly stolen glasses were improper and instructed the jury to disregard them. Mr. Farr has failed to demonstrate that the court's curative instructions—which juries are presumed to follow—were insufficient. Moreover, the trial court allowed the questions about Bender's appearance to rebut Mr. Farr's claim that he knew Bender was the man who robbed and shot him. Mr. Farr testified that the man who robbed him had bumps on his face, but the post-mortem photos of Bender did not show any bumps. The court of appeals therefore reasonably concluded that the prosecutor's comments during cross-examination did not infect the trial with unfairness.

### b. Alleged prosecutorial misconduct during closing arguments

Mr. Farr argues that the prosecutor made five improper statements during his closing argument:

(1) "I don't care if Michael Bender robbed and shot Ron[n]ell Farr ….";
(2) "Look at the pictures there. Where's the bumps on his face?";
(3) "What did [he] see in that bar? The glasses that the person was wearing?"; (4) "If all it takes to get killed in this community is to wear a pair of glasses and to look like someone …."; and (5) "[T]he defense doesn't want to put it this way but I will because I can't make sense of it any other way—is that he was killed because he was wearing a certain type of glasses. That's all it took. He was killed because of the glasses."

See Answer Ex. 12, ¶ 27; see also Petr's Mem. at 10–12.

The Wisconsin Court of Appeals addressed each statement, determined that none rose to the level of prosecutorial misconduct, and concluded that Mr. Farr's trial lawyer was not ineffective for failing to object. See Answer Ex. 12, ¶¶ 26–35. Mr. Farr has failed to show that these findings were objectively unreasonably. At trial, Mr. Farr testified that he "knew" Bender was the man who had robbed him. He also admitted that he "ran up on" Bender and pointed a gun at the back of his head to get back the glasses he believed Bender had stolen from him. And Mr. Farr said he considered taking the glasses after they fell off Bender when he was shot, but he decided against it because he had drawn too much attention.

Thus, the statements in question were comments on (or reasonable inferences from) the law and the evidence introduced at trial. That Mr. Farr's sole defense was that the shooting was unintentional did not preclude the State from presenting its theory that Farr shot Bender because he believed he stole his glasses and that perhaps Bender had misidentified Bender as his assailant. The appellate court therefore reasonably applied *Darden* and *Strickland* when it rejected Mr. Farr's

claim that the prosecutor engaged in prosecutorial misconduct during its closing argument.

***

Accordingly, Mr. Farr has not met his burden of demonstrating that he is entitled to relief under § 2254 on his prosecutorial-misconduct claims.

### 3. Whether Mr. Farr is entitled to relief under § 2254 on his abuse-of-discretion claim

Finally, Mr. Farr claims that his post-conviction lawyer was ineffective for failing to allege that the trial court abused its discretion when it allowed the State to present certain demonstrative evidence to the jury, namely: a surveillance video that captured "the time when Farr exited Quarters through the shooting"; a still image from the video that "showed Farr with his arm outstretched aiming the handgun at Bender, a flash, and what appeared to be the bullet exiting Bender's head"; and autopsy photos that showed the wounds to Bender's head and torso. *See* Answer Ex. 12, ¶ 38; *see also* Petr's Mem. at 12–15. According to Mr. Farr, the evidence was cumulative and unfairly prejudicial.

"[E]videntiary rulings of state trial courts are normally not subject to habeas review." *Dressler v. McCaughtry*, 238 F.3d 908, 914 (7th Cir. 2001) (citing *United States ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1223 (7th Cir. 1974)). "In order to claim a right to relief, a petitioner must establish that the incorrect evidentiary ruling was so prejudicial that it violated his due process right to a fundamentally fair trial, creating the likelihood that an innocent person was convicted." *Dressler*, 238 F.3d at 914 (citing *Thompkins v. Cohen*, 965 F.2d 330, 333 (7th Cir. 1992)).

The Wisconsin Court of Appeals reasonably determined that the trial court "properly exercised its discretion in managing [the challenged] demonstrative evidence." Answer Ex. 12, ¶ 40. The video, the still image, and the autopsy photos constituted direct evidence of the crime and were relevant to establishing Mr. Farr's intent. The trial court also limited how it allowed the State to use the evidence. The video was played twice during the State's case-in-chief and once during its closing argument (though it was stopped and restarted several times). *See* Answer Ex. 12, ¶ 37. And the photos were displayed on a screen but not given to the jury to review nor presented during the testimony of Bender's close friend. *See id.* ¶ 39, *see also* Answer Ex. 28, at 37:17–39:9. Mr. Farr has not demonstrated that those evidentiary rulings were so prejudicial as to deny his due-process right to a fair trial.

Accordingly, Mr. Farr has not met his burden of demonstrating that he is entitled to relief under § 2254 on his abuse-of-discretion claim.

## IV. Conclusion

For all the foregoing reasons, the Court finds that the Wisconsin Court of Appeals' decision denying Mr. Farr's ineffective-assistance-of-counsel claims was not contrary to clearly established Supreme Court precedent, did not involve an unreasonable application of such precedent, and was not based on an unreasonable determination of the facts before it. The Court therefore will deny Mr. Farr's application for habeas relief under § 2254.

## V. Certificate of Appealability

There is one final matter to address. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the [habeas] applicant." *See* Rule 11(a) of the Rules Governing Section 2254 Cases. A district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Court finds that Mr. Farr is not entitled to a certificate of appealability. Mr. Farr has not demonstrated "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Of course, Mr. Farr has a right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By a Person in State Custody, ECF No. 1, is **DENIED**.

**IT IS FURTHER ORDERED** that this action is **DISMISSED**.

**IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of September, 2019.

**BY THE COURT:**


*s/ David E. Jones*
DAVID E. JONES
United States Magistrate Judge